ROBERT E. COOPER, SBN 035888
DAVID A. BATTAGLIA, SBN 130474
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Plaintiff
SOUTHERN CALIFORNIA GAS COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA GAS COMPANY, a California public utility corporation, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF SANTA ANA, a municipal corporation, <br><br> Defendant. | CASE NO. 02-00658 GHK (BQRx) <br><br> COMPLAINT FOR: <br><br> (1) UNCONSTITUTIONAL IMPAIRMENT OF CONTRACT AND VIOLATION OF THE CONTRACTS CLAUSE OF THE U.S. AND CALIFORNIA CONSTITUTIONS; <br><br> (2) VIOLATION OF THE TAKINGS CLAUSE OF THE U.S. AND CALIFORNIA CONSTITUTIONS; <br><br> (3) VIOLATION OF PROPOSITION 13 OF THE CALIFORNIA CONSTITUTION; <br><br> (4) DECLARATORY RELIEF; <br><br> (5) VIOLATION OF THE DUE PROCESS CLAUSES OF THE U.S. AND CALIFORNIA CONSTITUTIONS; and <br><br> (6) ESTOPPEL. <br><br> ***DEMAND FOR JURY TRIAL*** |

Gibson, Dunn & Crutcher LLP


ENTERED ON ICMS
JAN 25 2002
CV

```
01/23/2002 3:54:06 PM    Receipt #: 6355
Paid by: Cashier: JSLOAN CLA 1-27
2:CV02-00658   FIRST LEGAL SUPPORT
2002-086900
Amount :             5 - Filing Fee Civil(1)
2:CV02-00658                          $60.00
2002-510000
Amount :            11 - Special Fund F/F(1)
Check Payment : 5185 /            $90.00
Total Payment :                  150.00
                                 150.00
```

## JURISDICTION

1.   The jurisdiction of this Court is invoked pursuant to Article 3, Section 2, of the United States Constitution and 28 U.S.C. Section 1331 in that the action arises under the Contracts, Takings, and Due Process Clauses of the United States Constitution, and Plaintiff's right to relief depends on resolution of substantial questions of federal law.  Jurisdiction also is invoked pursuant to 28 U.S.C. Section 1367 and principles of supplemental and ancillary jurisdiction.

## VENUE

2.   Venue is proper in the Central District of California in that Defendant resides and does business in this District, including business related to the claims asserted herein (28 U.S.C. Section 1391(b)(1)), the events on which the claims are based occurred in this District (28 U.S.C. Section 1391(b)(2)), and the property which is the subject of this action is located in this District (28 U.S.C. Section 1391(b)(2)).

## IDENTIFICATION OF PARTIES

3.   Plaintiff Southern California Gas Company ("The Gas Company") is a California corporation duly organized and existing in accordance with the laws of the State of California, with its principal place of business in the City and County of Los Angeles. It is a public utility subject to regulation by the California Public Utilities Commission.

4.   Defendant City of Santa Ana (the "City" or "City of Santa Ana") is a municipality with its principal place of business in this

1  District, and transacting affairs, doing business in, and causing
2  effects in the County of Orange, State of California.

3  ## SUMMARY OF ACTION

4      5.    In 1938, The Gas Company and the City of Santa Ana entered
5  into a written agreement, Ordinance No. 1061 (the "Franchise
6  Agreement"), expressly granting The Gas Company the right,
7  privilege, and franchise to lay, construct, erect, install, operate,
8  maintain, use, repair, replace or remove pipes and appurtenances for
9  transmitting and distributing natural gas for any and all purposes,
10 under, along, across or upon the streets of the City, for an
11 indeterminate term.   The Franchise Agreement was granted pursuant to
12 the Franchise Act of 1937, which requires The Gas Company to pay a
13 substantial annual fee for the use and enjoyment of its franchise
14 with the City.

15     6.    Last year the City of Santa Ana unilaterally imposed
16 substantial additional fees upon The Gas Company as a prerequisite
17 to exercising the rights and privileges explicitly provided to The
18 Gas Company in the Franchise Agreement.   Specifically, on or about
19 October 15, 2001, the City passed Ordinance No. NS-2480 and
20 Resolution No. 2001-063 (the "trench cut fee measures") requiring
21 the payment of trench cut fees by The Gas Company each time it
22 exercises its bargained-for right to install, repair, maintain or
23 replace its pipes and appurtenances.   Having negotiated the
24 Franchise Agreement requiring The Gas Company to pay almost one-half
25 million dollars in 2000 for specific contractual and property
26 rights, the City cannot unilaterally increase the monetary terms of
27 that agreement.

28

Gibson, Dunn &
Crutcher LLP

3

7.   Despite multiple requests from The Gas Company, the City has failed and refused to exempt or except The Gas Company from the imposition of these trench cut fees, and indeed will require the payment of such fees before any street excavations by The Gas Company take place.  As a result, the City of Santa Ana will benefit at the expense of all ratepayers of The Gas Company if allowed to collect fees beyond those allowed by the Franchise Act of 1937 and set forth in the Franchise Agreement.

8.   The enactment of the trench cut fee measures constitutes an unconstitutional impairment of the Franchise Agreement, and violates the Contracts Clauses of the Constitutions of the United States and the State of California and a breach of the Franchise Agreement.  The trench cut fee measures also constitute an unconstitutional taking in violation of the Taking Clause of the United States and California Constitutions.  In addition, the actions of the City in imposing this additional tax without approval from two-thirds of the voters of the City of Santa Ana violate the provisions of Proposition 13, enacted by the voters of California and set forth in the California Constitution, as well as the Due Process Clause of the United States and California Constitutions.

9.   The Gas Company also seeks declaratory and injunctive relief pursuant to the rights and privileges granted in the Franchise Agreement and applicable constitutional law to prevent the City from acting, and continuing to act, in an unfair, improper, illegal and unconstitutional manner.  The Gas Company must be exempted or excepted from the terms of the trench cut fee measures, or the measures must be stricken in their entirety as a matter of law.  The Gas Company also seeks to recover its attorneys' fees that

Gibson, Dunn &
Crutcher LLP

4

1  have been incurred, and will continue to be incurred, in protecting
2  The Gas Company's constitutional rights.

3                          **FACTUAL ALLEGATIONS**

4  **A.    The Franchise Agreement.**

5       10.   Government Code Section 39732 gives cities the right to
6  grant franchises for construction of public utilities.   The
7  Franchise Act of 1937, see Pub. Util. Code Section 6201, et seq.,
8  provides procedures to be followed by certain municipalities when
9  they exercise their power to grant a franchise.

10      11.   In 1938, pursuant to the Franchise Act of 1937, the City
11  of Santa Ana adopted Ordinance No. 1061, which granted to The Gas
12  Company a gas franchise.   A true and correct copy of Ordinance No.
13  1061, the Franchise Agreement, is attached hereto as Exhibit A and
14  is incorporated herein fully by this reference.   The Gas Company was
15  and is certified by the California Public Utilities Commission
16  pursuant to Section 1001 et seq. of the California Public Utilities
17  Code to provide natural gas service to residents and businesses in
18  Southern and Central California, including the City of Santa Ana.

19      12.   The Franchise Agreement granted The Gas Company all rights
20  and privileges to lay, install, construct, replace, remove, repair,
21  use, maintain and operate a gas system in, along and under the
22  streets of the City of Santa Ana.   Such a franchise by its very
23  nature is a property right.   A franchise to use City streets for
24  purposes of installing, maintaining, repairing, and replacing gas
25  pipes and appurtenances is a real property right in the nature of an
26  easement created by the franchise contract.   A franchise is
27  essentially a financial arrangement between the franchisee and the

28

Gibson, Dunn &
Crutcher LLP

5

1  governmental authority granting the franchisee certain rights and
2  privileges in government property for an agreed fee.

3      13.  In exchange for the rights and privileges granted by the
4  City for the use of the City streets, the parties agreed that The
5  Gas Company would make annual payments of two percent (2%) of the
6  gross annual receipts of The Gas Company derived from the use,
7  operation or possession of the franchise, but no less than one
8  percent (1%) of the gross annual receipts of The Gas Company derived
9  from the sale of gas to customers within the City.  The formula is
10 set by statute in Section 6231(c) of the California Public Utilities
11 Code.  This amounted to approximately $486,000 in franchise fees
12 2000.

13     14.  The Franchise Agreement expressly contemplated that street
14 cutting and excavation would take place pursuant to the contract,
15 and that City streets would thereby require repair.  Not only does
16 Section 2 give The Gas Company the right to "lay and use" pipes and
17 appurtenances "under" City streets, but Sections 1 and 2 provide
18 that The Gas Company is granted the right to "repair," "replace,"
19 and "maintain" its "Pipes and Appurtenances," which include "pipe,
20 pipeline, main, service, trap, vent, vault, manhole, meter, gauge,
21 regulator, valve, conduit, appliance, attachment, appurtenance and
22 any other property located or to be located in, upon, along, across,
23 under or over the streets of the City, and used or useful in the
24 transmitting and/or distribution of gas."  *See* Franchise Agreement
25 Section 1(f).  In addition, Section 9 specifically contemplates that
26 installing gas piping under the streets cannot always be done by
27 tunneling or boring under street surfaces, and Section 10 provides
28 that The Gas Company "shall, at its own cost and expense,

1   immediately repair any such damage and restore such street, or
2   portion of street, to as good a condition as existed before such
3   defect or other cause of damage occur[r]ed" if "any street shall be
4   damaged" by actions of The Gas Company. In short, street excavation
5   (and any alleged attendant wear and tear or "shortened street life"
6   arising therefrom) was always foreseeable in the terms of the
7   Franchise Agreement, and the franchise fee paid to the City
8   compensated it for this foreseeable use by The Gas Company of public
9   streets pursuant to the written contract.

10  **B.    The City Implements Trench Cut Fees In Contravention Of**
11  **The Franchise Agreement.**

12      15.   On or about October 15, 2001, the City of Santa Ana
13  enacted Ordinance No. NS-2480 requiring that any person engaged in
14  an excavation of a City street pay a trench cut fee as a
15  prerequisite to obtaining a permit in connection with such
16  excavation. On or about October 1, 2001, the City also enacted
17  Resolution No. 2001-063, which set the amount of the trench cut fee
18  at between $6.21 and $13.68 per square foot of street excavation.
19  Ordinance No. NS-2480 and Resolution No. 2001-063 are attached
20  hereto as Exhibits B and C and are incorporated herein in full by
21  this reference.

22      16.   The imposition of these new trench cut fees is in express
23  contravention of the terms of The Gas Company's written Franchise
24  Agreement. The Gas Company has paid, and continues to pay, hundreds
25  of thousands of dollars per year for the right and privilege of
26  using (*i.e.*, opening, excavating, and repairing) City streets. The
27  City cannot unilaterally change the terms of this written contract
28  by requiring that The Gas Company pay additional fees to exercise

Gibson, Dunn &
Crutcher LLP

1  the contractual and property rights granted in the Franchise
2  Agreement.

3      17.  Furthermore, the trench cut fee measures impose completely
4  arbitrary fees and are not reasonably designed to address any
5  alleged damage (*i.e.*, allegedly unavoidable shortened street life)
6  caused by street excavation and repair.  Although the funds raised
7  by the measures are earmarked for "rehabilitation and resurfacing"
8  of streets that have undergone excavation, the amount of the trench
9  cut fees bears no reasonable relationship to the true costs of
10  repairs resulting from excavations performed by The Gas Company,
11  makes no allowance for the quality of repair work performed by The
12  Gas Company, and bears no relationship whatsoever to any alleged
13  damage caused by The Gas Company.  The requirement that The Gas
14  Company pay the fee directly conflicts with the exercise of The Gas
15  Company's rights set forth in the Franchise Agreement.

16  **C.   The City Has Failed And Refused To Grant An Exemption To**
17  **The Gas Company.**

18      18.  Despite numerous requests, before the City Council and in
19  separate meetings with City officials, that the City exempt or
20  except The Gas Company from the imposition of these trench cut fees,
21  the City has failed and refused to grant such an exception or
22  exemption.  This is true despite the fact that other jurisdictions
23  within the service territory of The Gas Company that have enacted
24  such trench cut fees have exempted The Gas Company because they
25  would otherwise violate the nature and terms of their franchise
26  agreements.

27
28

Gibson, Dunn &
Crutcher LLP

8

1

## CLAIM ONE

2   **(Against The City For Unconstitutional Impairment Of The**

3   **Contracts Clause Of The United States And California**

4   **Constitutions)**

5       19.   Plaintiff incorporates herein by this reference the

6   allegations contained in Paragraphs 1 through 18, inclusive.

7       20.   Plaintiff hereby seeks declaratory, equitable and

8   injunctive relief to prevent the City from violating, and continuing

9   to violate, the Contracts Clauses of the United States Constitution

10  (U.S. Const., Art. I, § 10, cl. 1) and the California Constitution

11  (Cal. Const., Art. I, § 9).   This claim is also brought pursuant to

12  42 U.S.C. Section 1983 and related California law.

13      21.   The City and The Gas Company have an existing contractual

14  relationship that provides The Gas Company with certain contractual

15  and property rights similar to an easement or leasehold in exchange

16  for substantial compensation.   Among other things, The Gas Company

17  has the right to use (including the right to open and excavate) the

18  City streets for the fees provided in the Franchise Agreement.

19      22.   Acting under color of state law, the City has caused the

20  Gas Company to suffer a substantial deprivation of its contract

21  rights in violation of the federal and state constitutions.   The

22  City's recent trench cut fee measures imposing additional fees for

23  street excavation on The Gas Company constitute a substantial and

24  unconstitutional impairment of the Franchise Agreement.   The Gas

25  Company will be required by the City to pay fees and meet

26  requirements as a prerequisite to exercising its existing

27  contractual and property rights set forth explicitly in the

28  Franchise Agreement, rights for which it already is compensating the

Gibson, Dunn &
Crutcher LLP

9

1    City.  In essence, the City is double-charging The Gas Company.
2    These trench cut fees are substantial, and the impairment to the
3    express and implied terms of the Franchise Agreement is direct.  The
4    new trench cut fee measures effectively nullify the explicit terms
5    of the Franchise Agreement and impose completely unexpected and new
6    liabilities and limitations on the exercise of The Gas Company's
7    property interests, and therefore upon its ratepayers.  The trench
8    cut fees are also contrary to the established course of conduct
9    between the parties for over sixty years prior to the enactment of
10   the new street excavation fee measures.

11        23.  The Gas Company has incurred and will continue to incur
12   attorneys' fees and costs because of this proceeding, in amounts
13   that cannot yet be ascertained, that are recoverable in this action
14   under the provisions of 42 U.S.C. Section 1988(b) and California
15   Code of Civil Procedure Section 1021.5.  Before filing this
16   Complaint, The Gas Company informed the City that The Gas Company
17   would seek to recover its fees and costs herein, but the City chose
18   to resolve the matter through litigation.

19                                **CLAIM TWO**

20        **(Against The City For Violation Of The Taking Clause Of**

21              **The United States And California Constitutions)**

22        24.  Plaintiff incorporates herein by this reference the
23   allegations contained in Paragraphs 1 through 23, inclusive.

24        25.  Plaintiff hereby seeks declaratory, equitable and
25   injunctive relief for violation of the Taking Clause contained in
26   the Fifth Amendment to the United States Constitution, made
27   applicable to the states in the Fourteenth Amendment (U.S. Const.,
28   Amends. V & XIV), and a similar provision contained in Article I,

Gibson, Dunn &
Crutcher LLP

10

1 | Section 19, of the California Constitution (Cal. Const., Art. I,
2 | § 19). This claim is also brought pursuant to 42 U.S.C. Section
3 | 1983 and related California law.

4 |     26. Acting under color of law, the City has caused the Gas
5 | Company to suffer a deprivation of its federal and state
6 | constitutional rights. The City will require The Gas Company to pay
7 | excessive and unlawful fees pursuant to the recently enacted trench
8 | cut fee measures without formal condemnation, as a prerequisite to
9 | The Gas Company's exercise of its express contractual and property
10 | rights provided for the Franchise Agreement. The City is thereby
11 | permanently, directly, and substantially interfering with The Gas
12 | Company's use and enjoyment of its contractual and property rights
13 | amounting to an unauthorized taking without just compensation.

14 |     27. The Gas Company has incurred and will continue to incur
15 | attorneys' fees and costs because of this proceeding, in amounts
16 | that cannot yet be ascertained, which are recoverable in this action
17 | under the provisions of 42 U.S.C. Section 1988(b) and Sections 1036
18 | and 1021.5 of the California Code of Civil Procedure. Before filing
19 | this Complaint, The Gas Company informed the City that The Gas
20 | Company would seek to recover its fees and costs herein, but the
21 | City chose to resolve the matter through litigation.

22 | **CLAIM THREE**

23 | **(Against The City For Violation Of Proposition 13**

24 | **Of The California Constitution)**

25 |     28. Plaintiff incorporates herein by this reference the
26 | allegations contained in Paragraphs 1 through 27, inclusive.

27 |     29. By enacting and implementing the provisions of the subject
28 | street excavation fee measures, the City has acted in violation of

1   Article XIII A of the California Constitution, commonly known as
2   "Proposition 13."   The fees imposed pursuant to the trench cut fee
3   measures are special taxes because the fees exceed the reasonable
4   cost of providing the services and do not bear a fair and reasonable
5   relationship to the true costs of repairs resulting from excavations
6   performed by The Gas Company and make no allowance for the quality
7   of repair work performed by The Gas Company.   The trench cut fees
8   have not been approved by two-thirds of the qualified voters of the
9   City.   The failure to obtain this approval violates the California
10  Constitution.

11      30.   The Gas Company has incurred and will continue to incur
12  attorneys' fees and costs because of this proceeding, in amounts
13  that cannot yet be ascertained, which are recoverable in this action
14  under Section 1021.5 of the California Code of Civil Procedure.
15  Before filing this Complaint, The Gas Company informed the City that
16  The Gas Company would seek to recover its fees and costs herein, but
17  the City chose to resolve the matter through litigation.

18                          **CLAIM FOUR**

19      **(Against The City For Declaratory And Injunctive Relief**
20          **Arising From Breach Of Franchise Agreement)**

21      31.   Plaintiff incorporates herein by this reference the
22  allegations contained in Paragraphs 1 through 30 inclusive.

23      32.   Plaintiff hereby requests declaratory and equitable relief
24  pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules
25  of Civil Procedure.

26      33.   Actual controversies have arisen between The Gas Company
27  and the City of Santa Ana with regard to whether certain fees
28  recently imposed by the City as a prerequisite to trench cutting

Gibson, Dunn &
Crutcher LLP

1  violate the terms of the Franchise Agreement between The Gas Company
2  and the City, which provides that The Gas Company is paying
3  substantial compensation *already* for the rights and privileges to
4  use City streets.  Pursuant to the Franchise Agreement, The Gas
5  Company pays hundreds of thousands of dollars a year to the City of
6  Santa Ana for its specific contractual and property rights.  The
7  City has failed and refused to grant an exception or exemption to
8  The Gas Company from the trench cut fees, and The Gas Company will
9  be required to pay substantial additional sums to exercise its
10  rights and privileges provided for in the Franchise Agreement.

11  34.  The City's unilateral and unlawful imposition on The Gas
12  Company of the trench cut fees that are inconsistent with or vary
13  from the terms of the Franchise Agreement constitutes a breach of
14  the Franchise Agreement and an improper unilateral modification of
15  the Franchise Agreement.

16  35.  The Gas Company seeks declaratory relief and a judicial
17  determination, pursuant to 28 U.S.C. Section 2201 and Rule 57 of the
18  Federal Rules of Civil Procedure, (1) that the imposition of the
19  trench cut fees are in contravention of the Franchise Agreement
20  between The Gas Company and the City, (2) that The Gas Company is
21  exempt from or not subject to the terms of the trench cut fee
22  measures because of the terms of the Franchise Agreement with the
23  City, (3) that the trench cut fee measures are unconstitutional as
24  applied to The Gas Company, and (4) that the City is prohibited from
25  enforcing the recent trench cut fee measures against The Gas
26  Company, or mandating that the City exempt The Gas Company from the
27  terms of the measures, given the terms of the Franchise Agreement
28  and applicable constitutional law.

Gibson, Dunn &
Crutcher LLP

## CLAIM FIVE

### (Against The City For Violation Of The Due Process Clauses
### Of The United States And California Constitutions)

36.  Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 35, inclusive.

37.  At all relevant times, the City was a municipality operating under the color of state law.  By enacting and implementing the provisions of the trench cut fee measures, the City has acted unconstitutionally to deprive The Gas Company of its property and contractual rights under its franchise without due process of law in violation of Article XIV, Section 1, of the United States Constitution and 42 U.S.C. Section 1983, as well as Article I, Section 15, Clause 7 of the California Constitution.

38.  The actions of the City in enacting and implementing the trench cut fee measures against The Gas Company were and are arbitrary, capricious and unreasonable in at least the following respects, among others:   (a) the trench cut fees have the effect of circumventing the clear and unambiguous terms of the Franchise Agreement, which provides for the payment of a specified franchise fee as compensation for the right and privilege obtained by The Gas Company for using (including opening, excavating and repairing) the City streets; (b) the fee schedule imposed by the City pursuant to Resolution No. 2001-063 bears no reasonable relationship to the true costs of repairs resulting from excavations performed by The Gas Company and makes no allowance for the quality of repair work performed by The Gas Company; (c) the fee schedule imposed by the City pursuant to Resolution No. 2001-063 is arbitrary and unreasonable given The Gas Company's compliance with all requisite

Gibson, Dunn &
Crutcher LLP

14

1 | state and local measures requiring that repairs be conducted in a
2 | specified fashion, subject to inspection; and (d) the fees exceed
3 | the reasonable cost of providing services related to the processing
4 | of permits or other ministerial functions.

5 |     39.   The Gas Company has incurred and will continue to incur
6 | attorneys' fees and costs because of this proceeding in amounts that
7 | cannot yet be ascertained, which are recoverable in this action
8 | under the provisions of 42 U.S.C. Section 1988(b) and California
9 | Code of Civil Procedure Section 1021.5.  Before filing this
10 | Complaint, The Gas Company informed the City that The Gas Company
11 | would seek to recover its fees and costs herein, but the City chose
12 | to resolve the matter through litigation.

### CLAIM SIX

### (Against The City For Estoppel)

15 |     40.   The Gas Company incorporates herein by reference the
16 | allegations contained in Paragraphs 1 through 39, inclusive.

17 |     41.   Under the Franchise Agreement, The Gas Company has the
18 | right to excavate in the streets, without paying excavation fees, to
19 | lay, construct, erect, install, operate, maintain, use, repair,
20 | replace or remove pipes and appurtenances for transmitting and
21 | distributing natural gas.  The City's conduct before and after
22 | entering into the Franchise Agreement, including, but not limited
23 | to, its failure to impose any additional fee beyond the franchise
24 | fee to trench or excavate streets in the City of Santa Ana, was
25 | intended to, and did, lead The Gas Company to believe that the
26 | negotiated franchise fees were intended to, and did, cover all costs
27 | associated with the excavation or trenching of the City's streets,
28 | including the expectable wear and tear on City streets in the normal

Gibson, Dunn &
Crutcher LLP

15

course of The Gas Company's activities.  The Gas Company reasonably relied on the all-inclusive terms of the Franchise Agreement by, *inter alia*, investing millions of dollars to install gas distribution equipment under City streets.

42.  The trench cut fee measures effect substantial and unilateral changes in the Franchise Agreement and should have been, but were not, raised by the City at the time The Gas Company entered into the Franchise Agreement.  Having failed to include the fees in the Franchise Agreement, the City cannot now unilaterally modify the Franchise Agreement to impose trench cut fees.  The City is therefore estopped from asserting that excavation fees are not included in The Gas Company's franchise fees and/or from charging The Gas Company fees not specified in the Franchise Agreement.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff The Gas Company prays for judgment against Defendant The City of Santa Ana as follows:

1.  For the Court to issue a declaration stating that The Gas Company is exempt or excepted from, or not subject to the terms of, the recent street excavation fee measures because of the express terms of the Franchise Agreement with the City;

2.  For the Court to issue an injunction against the City preventing the enforcement of the recent street excavation fee measures against The Gas Company, or mandating that the City exempt or except The Gas Company from the terms of the measures, given the express terms of the written franchise agreement between the City and The Gas Company;

3.  For the Court to issue a declaration stating that the recent street excavation fee measures are unconstitutional;

Gibson, Dunn &
Crutcher LLP

16

4.    For the Court to issue an injunction preventing the City from seeking to enforce or enforcing the recent street excavation fee measures because of their unconstitutionality;

5.    For all costs of suit incurred herein;

6.    For reasonable attorneys' fees incurred herein;

7.    For such other and further relief as the Court may deem just and proper.

DATED:   January 23, 2002

GIBSON, DUNN & CRUTCHER LLP

By:    _____
       David A. Battaglia

Attorneys for Plaintiff
SOUTHERN CALIFORNIA GAS COMPANY

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

GIBSON, DUNN & CRUTCHER LLP

By:    _____
       David A. Battaglia

Attorneys for Plaintiff
SOUTHERN CALIFORNIA GAS COMPANY

10534969_7.DOC

Gibson, Dunn &
Crutcher LLP

**Exhibit A**

## ORDINANCE NO. 1081

AN ORDINANCE OF THE CITY OF SANTA ANA GRANTING TO SOUTHERN COUNTIES GAS COMPANY OF CALIFORNIA A CORPORATION, THE RIGHT, PRIVILEGE AND FRANCHISE TO LAY AND USE PIPES AND APPURTENANCES FOR TRANSMITTING AND DISTRIBUTING GAS FOR ANY AND ALL PURPOSES UNDER, ALONG, ACROSS OR UPON THE PUBLIC STREETS, WAYS, ALLEYS AND PLACES, AS THE SAME NOW OR MAY HEREAFTER EXIST, WITHIN SAID MUNICI-PALITY.

The Council of the City of Santa Ana does ordain as follows:

SECTION ONE:

Whenever in this ordinance the words or phrases hereinafter in this section defined are used, they shall have the respective meanings assigned to them in the following definitions (unless, in the given instance, the context wherein they are used shall clearly import a different meaning):

(a) The word "Grantee" shall mean the corporation to which the franchise contemplated in this ordinance is granted and its lawful successors or assigns:

(b) The word "City" shall mean the City of Santa Ana, a municipal corporation of the State of California, in its present incorporated form or in any later reorganized, consolidated or reincorporated form;

(c) The word "Streets" shall mean the public streets, ways, alleys and places as the same now or may hereafter exist within said City;

(d) The word "Engineer" shall mean the City Engineer of the City;

(e) The word "Gas" shall mean natural or manufactured gas, or a mixture of natural and manufactured gas;

(f) The phrase "Pipes and Appurtenances" shall mean pipe, pipeline, main, service, trap, vent, vault, manhole, meter, gauge, regulator, valve, conduit, appliance, attachment, appurtenance and any other property located or to be located in, upon, along, across, under or over the streets of the City, and used or useful in the transmitting and/or distribution of gas.

(g) The phrase "lay and use" shall mean to lay, construct, erect, install, operate, maintain, use, repair, replace or remove.

SECTION TWO:

That the right, privilege and franchise, subject to each and all of the terms and conditions contained in this ordinance, and pursuant to the Provisions of the "Franchise Act of 1937", be and the same is hereby granted to Southern Counties Gas Company of California, a corporation organized and existing under and by virtue of the laws of the State of California, herein referred to as the "Grantee", to lay and use pipes and appurtenances for transmitting and distributing gas for any and all purposes, under, along, across or upon the streets, of the City, for an indeterminate term or period from and after the effective date hereof, that is to say, this franchise shall endure in full force and effect until the same shall, with the consent of the Railroad Commission of the State of California, be voluntarily surrendered or abandoned by its possessor, or until the State of California or some municipal or public corporation thereunto duly authorized by law shall purchase by voluntary agreement or shall condemn and take under the

# EXHIBIT A

18

City of Santa Ana Q    1061 (Continued)

power of eminent domain, all property actually used and useful in the exercise of
this franchise, and situate within the territorial limits of the State, municipal
or public corporation purchasing or condemning such property, or until this fran-
chise shall be forfeited for non-compliance with its terms by the possessor thereof.

**SECTION THREE:**

The Grantee shall pay to the City at the times hereinafter specified,
in lawful money of the United States, a sum annually which shall be equivalent
to two per cent (2%) of the gross annual receipts of grantee arising from the use,
operation or possession of said franchise; provided, however, that such payment
shall in no event be less than one per cent (1%) of the gross annual receipts of
the grantee derived from the sale of gas within the limits of the City under this
franchise.

The grantee of this franchise shall file with the Clerk of the City
within three (3) months after the expiration of the calendar year, or fractional
calendar year, following the date of the grant of this franchise, and within three
(3) months after the expiration of each and every calendar year thereafter, a
duly verified statement showing in detail the total gross receipts of the grantee,
its successors or assigns during the preceding calendar year, or such fractional
calendar year, from the sale of the utility service within the City for which this
franchise is granted. It shall be the duty of the grantee to pay to the City within
fifteen (15) days after the time for filing such statement, in lawful money of
the United States, the specified percentage of the gross receipts for the calendar
year, or such fractional calendar year, covered by such statement. Any neglect,
omission or refusal by said grantee to file such verified statement, or to
pay said percentage, at the times or in the manner hereinbefore provided, shall
be grounds for the declaration of a forfeiture of this franchise and of all
rights thereunder.

**SECTION FOUR:**

This grant is made in lieu of all other franchises, rights, or privileges
owned by the grantee, or by any successor of the grantee to any rights under this
franchise, for transmitting and distributing gas within the limits of the City,
as said limits now or may hereafter exist, and the acceptance of the franchise
hereby granted shall operate as an abandonment of all such franchises, rights
and privileges within the limits of this City, as such limits now or may hereafter
exist, in lieu of which this franchise is granted.

**SECTION FIVE:**

The franchise granted hereunder shall not become effective until
written acceptance thereof shall have been filed by the grantee thereof with the
Clerk of the City. When so filed, such acceptance shall constitute a continuing
agreement of the grantee that if and when the City shall thereafter annex or
consolidate with, additional territory, any and all franchise rights and privileges
owned by the grantee therein, except the franchise derived under the aforesaid
Constitutional provision, shall likewise be deemed to be abandoned within the
limits of such territory.

**SECTION SIX:**

The franchise granted hereunder shall not in any way or to any extent im-
pair or effect the right of the City to acquire the property of the grantee hereof
either by purchase or through the exercise of the right of eminent domain, and
nothing herein contained shall be construed to contract away or to modify or abridge,
either for a term or in perpetuity, the City's right of eminent domain in respect
to the grantee or any public utility. Nor shall this franchise ever be given any

City of Santa Ana Or. 1081 (Continued)

value before any court or other public authority in any proceeding of any character in excess of the cost to the grantee of the necessary publication and any other sum paid by it to the City therefor at the time of the acquisition thereof.

SECTION SEVEN:

The grantee of this franchise shall file a bond, running to the City, with at least two good and sufficient sureties, to be approved by the legislative body thereof, in a penal sum of $1000.00, conditioned that the grantee shall well and truly observe, fulfill and perform each and every term and condition of this franchise, and that in case of any breach of condition of said bond, the whole amount of the penal sum therein named shall be taken and deemed to be liquidated damages and shall be recoverable from the principal and sureties upon said bond. Said bond shall be filed with the legislative body of the City within five (5) days after the date of the granting of this franchise; and in case said bond shall not be so filed, or shall not receive the approval of the legislative body, this franchise shall be forfeited and any money paid to the City in connection therewith shall likewise be forfeited.

SECTION EIGHT:

The grantee of this franchise shall

(a) construct, install and maintain all pipes and appurtenances in accordance with and in conformity with all of the ordinances, rules and regulations heretofore or hereafter adopted by the legislative body of this City in the exercise of its police powers and not in conflict with the paramount authority of the State of California, and, as to State highways, subject to the provisions of general laws relating to the location and maintenance of such facilities:

(b) pay to the City, on demand, the cost of all repairs to public property made necessary by any operations of the grantee under this franchise;

(c) indemnify and hold harmless the City and its officers from any and all liability for damages proximately resulting from any operations under this franchise;

(d) remove or relocate, without expense to the City, any facilities installed, used and maintained under this franchise if and when made necessary by any lawful change of grade, alignment or width of any public street, way, alley or place, including the construction of any subway or viaduct by the City; and

(e) file with the legislative body of the City within thirty (30) days after any sale, transfer, assignment or lease of this franchise, or any part thereof, or of any of the rights or privileges granted thereby, written evidence of the same, certified thereto by the grantee or its duly authorized officers.

SECTION NINE:

The Engineer shall have power to give the grantee such directions for the location of any pipes and appurtenances as may be reasonably necessary to avoid sewers, water pipes, conduits or other structures lawfully in or under the streets; and before the work of constructing any pipes and appurtenances is commenced, the grantee shall file with said Engineer plans showing the location thereof, which shall be subject to the approval of said Engineer (such approval not to be unreasonably withheld); and all such construction shall be subject to the inspection of said Engineer and done to his reasonable satisfaction. All street coverings or

20

City of Santa Ana — No. 1081 (Continued)

openings of traps, vaults, and manholes shall at all times be kept flush with the surface of the streets; provided, however, that vents for underground traps, vaults and manholes may extend above the surface of the streets when said vents are located in parkways, between the curb and the property line.

Where it is necessary to lay any underground pipes through, under or across any portion of a paved or macadamized street, the same, where practicable and economically reasonable shall be done by a tunnel or bore, so as not to disturb the foundation of such paved or macadamized street; and in the event that the same cannot be so done, such work shall be done under a permit to be granted by the Engineer upon application therefore.

SECTION TEN:
If any portion of any street shall be damaged by reason of defects in any of the pipes and appurtenances maintained or constructed under this grant, or by reason of any other cause arising from the operation or existence of any pipes and appurtenances constructed or maintained under this grant, said grantee shall, at its own cost and expense, immediately repair any such damage and restore such street, or portion of street, to as good a condition as existed before such defect or other cause of damage occured, such work to be done under the direction of the Engineer, and to his reasonable satisfaction.

SECTION ELEVEN:
(a) If the grantee of this franchise shall fail, neglect or refuse to comply with any of the provisions or conditions hereof, and shall not, within ten (10) days after written demand for compliance, begin the work of compliance, or after such beginning shall not prosecute the same with due diligence to completion, then the City, by its legislative body, may declare this franchise forfeited.

(b) The City may sue in its own name for the forfeiture of this franchise, in the event of non-compliance by the grantee, its successors or assigns, with any of the conditions thereof.

SECTION TWELVE:
The grantee of this franchise shall pay to the City a sum of money sufficient to reimburse it for all publication expenses incurred by it in connection with the granting of this franchise; such payment to be made within thirty (30) days after the City shall furnish such grantee with a written statement of such expenses.

SECTION THIRTEEN:
Within ten (10) days after the passage and publication of this ordinance, the grantee shall file with the City Clerk a written acceptance of the franchise hereby granted, and an agreement to comply with the terms and conditions hereof.

SECTION FOURTEEN:
The City Clerk shall certify to the passage of this ordinance and shall cause the same to be published in three consecutive issues of the ORANGE COUNTY REPORTER, a daily newspaper, printed, published and circulated in the City of Santa Ana, and hereby designated for that purpose, and thirty (30) days thereafter shall take effect and be in force.

PASSED AND ADOPTED by the Council of the City of Santa Ana at its regular meeting held on the 21st day of March, 1938

FRED C. ROWLAND,
Mayor

ATTEST:
E.L.VEGELY,
City Clerk

21

(S E A L)

City of Santa Ana    rd. 1061 (Continued)

STATE OF CALIFORNIA    )
COUNTY OF ORANGE       )
CITY OF SANTA ANA      )

     I, E. L. VEGELY, do hereby certify that I am the City Clerk and Ex-officio Clerk of the City Council of the City of Santa Ana, that the foregoing ordinance was regularly introduced and read to the said Council at its regular meeting, held on the 7th day of March, 1938, and was again read to said council at its regular meeting, held on the 21st day of March, 1938, and was at said meeting regularly passed and adopted by said Council by the following vote, to-wit:

| | | |
|---|---|---|
| AYES, | TRUSTEES: | Plummer, W. Bruns, Joseph P. Smith, E. Penn, Ernest H. Layton, Fred C. Rowland. |
| NOES, | TRUSTEES: | None |
| ABSENT, | TRUSTEES: | None |

                              E. L. VEGELY
                              City Clerk

(S E A L).

     I, E. L. VEGELY, City Clerk and Ex-Officio Clerk of the City of Santa Ana, do hereby certify that the foregoing is a full, true and correct copy of Ordinance No. 1061, duly passed and adopted by the City Council at its regular meeting held on the 21st day of March, 1938.

                   (Signed)     E. L. VEGELY
                            City Clerk

                            (S E A L)

r. C. & N. APPL. #21994 C.R.C. DEC. #30840 DATED May 9, 1938

22

**Exhibit B**

## ORDINANCE NO. NS-2480

### AN ORDINANCE AMENDING ARTICLE III OF CHAPTER 33 AND ADDING ARTICLE XVIII TO CHAPTER 13 OF THE CITY'S CODE TO ESTABLISH A TRENCH CUT FEE TO BE IMPOSED IN CONJUNCTION WITH PERMITS FOR EXCAVATION IN THE PUBLIC RIGHT-OF-WAY

THE CITY COUNCIL OF THE CITY OF SANTA ANA ORDAINS AS FOLLOWS:

Section 1.    The City Council of the City of Santa Ana (the "City") finds, determines and declares as follows:

A.    The City owns and maintains over 400 miles of streets and public right of way, which are subject pursuant to state and federal law as well as grant of franchise, to being excavated with trench cuts for the purpose of laying of utilities, such as water, sewer, gas, electric, communication, or video signal service. This Ordinance is necessary to establish the City's authority to impose certain fees which will reduce the adverse effects that street excavations have upon the economic life of streets of the City. Such regulation of excavations in City streets to help reduce disruption of and interference with public use of the streets, help prevent premature degradation, and maintain the safe condition of the streets protects the public health, safety and welfare. The public health, safety and welfare of the City requires the enactment of this Ordinance as a municipal affair, and as a valid and appropriate exercise of the City's police power.

B.    Experience in other cities in California including Los Angeles, Sacramento and San Francisco, as well as cities in other states including the cities of: Austin, Texas; Kansas City, Missouri; Burlington, Vermont; Cincinnati, Ohio; and, Phoenix, Arizona have demonstrated that excavations in paved streets degrade and shorten the life of the surface of the streets, and this degradation increases the frequency and cost to the public of necessary resurfacing, maintenance and repair. Additionally, the Sacramento and Cincinnati studies concluded that pavement degradation occurs regardless of the quality of the workmanship in filling the excavation and restoring the pavement.

C.    In order to determine the applicability of the foregoing studies to the City of Santa Ana, the City retained Dr. M.Y. Shahin, who has previously participated in the studies for Los Angeles, San Francisco, and Sacramento, to prepare a report. The report for the City by Dr. Shahin dated January 1999 and on file in the office of the Director of Public Works Agency, shows that even if pavement restoration in the trench itself is structurally adequate, excavations damage the strength and life of the

## EXHIBIT B
### 23

pavement located adjacent to the trench where the excavation occurs.
The potential for damage to the pavement is magnified when a street is
subject to multiple excavations after the street is surfaced or resurfaced
and before the next scheduled resurfacing. Additional thickness of asphalt
coating is needed to reconstruct a street if it has been subjected to
excavations in order to return it to its original strength and quality.

D.    Prior to the adoption of this Ordinance, the City Council reviewed all of the
foregoing studies, and recognizes and relies upon the experience reflected
therein in support of this Ordinance. Copies of these studies are available
for public review upon request. The City Council finds that these studies are
relevant to the problems addressed by the City in enacting this Ordinance,
and more specifically finds that these studies provide convincing evidence of
the significant adverse unavoidable effects of excavations on the City's
street system.

E.    The fee imposed by this Ordinance to be paid to help offset the shortened
life of the streets that are cut (the "Trench Cut Fee"), provides an incentive
that will encourage utilities to minimize excavations in city streets. The fee
will also promote better coordination among utilities making excavations in
City streets and between these utilities and the City (i) to minimize the
number of excavations being made wherever feasible, and (ii) to ensure
that excavations are performed, to the maximum extent possible, in
streets scheduled for resurfacing within the same or succeeding fiscal
year as the excavation.

F.    When an excavation is performed where the Trench Cut Fee is applicable,
the entity making and benefiting from the excavation should be required to
pay the City a fee that reimburses to the City the value of unavoidably
shortened economic life of that street caused by the excavation and the
City's increased costs in reconstructing the street, in addition to any other
applicable fees or charges. Because the effect of the diminished life
caused by excavations decreases with time, the fee should be highest for
excavations in newly surfaced streets, and should decrease as the age of
the street surface being excavated increases.

G.    Requiring the payment of a fee for excavations not undertaken in
coordination with the City's resurfacing program will provide an important
incentive for utilities to coordinate their excavations with other utilities and
with the City's street resurfacing schedule, to avoid excavations in these
streets wherever feasible.

H.    This Ordinance does not conflict with provisions of State law, including,
but not limited to, Sections 7901 and 12808 of the Public Utilities Code
related to interstate telecommunication franchises because the fees
hereunder are not charged for the same right granted by State law, but,

instead, are charged to recover the costs of mitigating the degradation that the excavation causes to the pavement over and adjacent to the trench, and the increased cost to the City in reconstructing a street that has been patched following an excavation.

I.  Likewise, this Ordinance is consistent with the terms of existing utility franchises with the City of Santa Ana, because (i) a franchise is intended solely to authorize a utility's use of City streets, ways, alleys and places, (ii) franchise fees established for franchises were not intended to recover the costs of mitigating damage to the pavement over or adjacent to the trench; nor was this damage known to the City when fees for the City's existing franchises were established, (iii) the City does not use, nor is it required to use, franchise fee revenue to pay for street surfacing, resurfacing and/or reconstruction, (iv) franchises are subject to ordinances and regulations subsequently enacted by the City in the exercise of its police power, and (v) the fee authorized by this Ordinance is not related to the quality of workmanship of the repair of the street following its excavation, but instead relate to the shortening of the effective life of a street and the increased cost in reconstruction that is inherent in any excavation.

J.  This Ordinance is in conformance with Section 253(C) of the Federal Telecommunications Act of 1996 which expressly recognizes the authority of local governments to impose reasonable nondiscriminatory fees upon telecommunications providers using the public right-of-way, as well as California Government Code 50030 which specifically authorizes the imposition of a permit fee that do not exceed the reasonable costs of providing the service for which the fee is charged.

Section 2.    Sections 33-58 (Bond or Insurance) and 33-59 (Permit) of the City's Code are hereby repealed.

Section 3.    Sections 33-59 through 33-59.6 are hereby added to Chapter 33 of the City's Code as follows:

**Section 33-59. Purpose of Trench Cut Fee.**

Excavations in paved streets owned and maintained by the City degrade and shorten the life of the surface of the streets, and this degradation increases the frequency and cost to the public of necessary resurfacing, maintenance and repair. It is appropriate that entities responsible for excavating into the City's right of way bear this burden rather than the taxpayers of the City. In addition, establishment of a trench cut fee will create an incentive for coordination of efforts in excavating the streets to lay utilities.

Ordinance No. NS-2480
Page 3 of 7

### Section 33-59.1. Establishment of Trench Cut Fee.

No person shall excavate in the public right of way without, in addition to all other
requirements of this Code, having first paid to the City a "Trench Cut Fee." The
amount of this Trench Cut Fee shall be set from time to time by resolution, and
shall not exceed the reasonable cost necessary to mitigate the degradation to the
public streets caused by such excavation.

### Section 33-59.2. Variance From Payment Of Trench Cut Fee.

Any person subject to the Trench Cut Fee may request that the Director waive
the requirement of payment of the Trench Cut Fee due to individual
circumstances that demonstrate, on a case-by-case basis, that the amount of the
fee is not reasonably related to the projected impact of the proposed excavation.

### Section 33-59.3. Exceptions.

(a)      Excavations in streets scheduled for pavement structural improvements in
the City's capital improvement construction schedule within one (1) year of the
date of excavation shall be exempt from the Trench Cut Fee. The Public Works
Agency shall endeavor to notify public utilities of streets so scheduled.

(b)      No Trench Cut Fee shall be charged for underground utility district
projects, utility line relocations necessitated by city street work projects or by
street vacations or abandonments.

(c)      No Trench Cut Fee shall be charged with respect to excavation in a
sidewalk or a concrete street.

### Section 33-59.4. Utility Master Plans.

Any utility owning, operating or installing in City streets, alleys, sidewalks, or any
other public places facilities providing water, sewer, gas, electric, communication,
video or other utility services, shall prepare and submit to the Director a utility
master plan, in a format specified by the Director, that shows the location of the
utility's existing facilities in City streets, alleys, sidewalks, and other public places,
and shows all of the utility's planned major utility work in City streets, alleys,
sidewalks and other public places for the next five years. Utilities shall submit an
initial utility master plan no later than one hundred eighty (180) days after the
effective date of the ordinance adopting this section. Thereafter, each utility shall
submit annually, on the first regular business day of July, a revised and updated
utility master plan. As used in this subsection, the term "planned major utility
works" refers to any and all future excavations planned by the utility when the
utility master plan or update is submitted that will affect any City street, alley,
sidewalk, or other public place for more than fifteen (15) days, provided that the
utility shall not be required to show future excavations planned to occur more

than five (5) years after the date that the utility master plan or update is submitted. Any and all utility master plans submitted pursuant to this section shall be confidential to the fullest extent provided by law and used solely for purposes of coordination.

## Section 33-59.5 Coordination with City

(a)    Prior to applying for an excavation permit in the City's streets, alleys, sidewalks or other public places the City shall review on behalf of the applicant the utility master plans and the City's five-year repaving plan on file with the director. The applicant shall coordinate, to the extent practicable, with the utility and street work shown on such plans to minimize damage to, and avoid undue disruption and interference with the public use of such streets, alleys, sidewalks or other public places. Such coordination shall include:

(i)    Whenever two or more parties (*i.e.*, the City or any utility) have proposed a major excavation in the same block during a five-year period, they shall meet and confer with the City regarding whether it is feasible to conduct a joint operation. If the Director determines that it is feasible to conduct a joint operation, a single contractor shall be selected and a single application fee charged.

(ii)    Any utility aggrieved by the Director's decision to require a joint operation may, within thirty (30) days of the Director's written notice, file an appeal pursuant to Chapter 3 of this Code. In determining such appeal, the hearing officer or Council shall consider the impact of the proposed excavation on the neighborhood, the applicant's need to provide services to a property or area, facilitating the deployment of new technology as directed pursuant to official City policy, and the public health, safety, welfare, and convenience.

(b)    To avoid future excavations and to reduce the number of street excavations, telecommunication companies shall be requested, when practical, to install spare conduits.

Section 4.    Article XVII, entitled Trench Cut Fee Fund, is hereby added to Chapter 13 of the City's Municipal Code as follows:

## ARTICLE XVIII
## TRENCH CUT FEE FUND

### Section 13-160. Creation of trench cut fee fund.

There is hereby created and established the "Trench Cut Fee Fund."

### Section 13-161. Deposit of moneys.

27

All funds received pursuant to the provisions of Section 59 of Chapter 33 of this Code shall be placed in the Trench Cut Fee Fund.

**Section 13-162. Expenditure of funds.**

Funds maintained in the Trench Cut Fee Fund shall only be expended for the rehabilitation and resurfacing of the public right of way where excavation has occurred after the effective date of this Article.

Section 5.    If any section, subsection, sentence, clause, phrase or portion of this ordinance is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this ordinance. The City Council of the City of Santa Ana hereby declares that it would have adopted this ordinance and each section, subsection, sentence, clause, phrase or portion thereof irrespective of the fact that any one or more sections, subsections, sentences, clauses, phrases, or portions be declared invalid or unconstitutional.

ADOPTED this 15th day of October, 2001.

Miguel A. Pulido
Mayor

APPROVED AS TO FORM:
Joseph W. Fletcher, City Attorney

By:
Benjamin Kaufman
Chief Assistant City Attorney

AYES:            Councilmembers:    Alvarez, Bist, Christy, Franklin, Pulido, Solorio (6)

NOES:            Councilmembers:    McGuigan (1)

ABSTAIN:        Councilmembers:    None (0)

NOT PRESENT: Councilmembers:    None (0)

28

Ordinance No. NS-2480
Page 6 of 7

## CERTIFICATE OF ATTESTATION AND ORIGINALITY

I, PATRICIA E. HEALY, Clerk of the Council, do hereby attest to and certify that the attached Ordinance No. NS-2480 to be the original ordinance adopted by the City Council of the City of Santa Ana on October 15, 2001, and that said ordinance was published in accordance with the Charter of the City of Santa Ana.

Date: 10-19-01

Patricia Healy

Clerk of the Council
City of Santa Ana

29

Ordinance No. NS-2480
Page 7 of 7

**Exhibit C**

## RESOLUTION NO. 2001-063

A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF SANTA ANA SETTING THE AMOUNT OF THE TRENCH CUT FEE ESTABLISHED PURSUANT TO ARTICLE III OF CHAPTER 33 OF THE SANTA ANA MUNICIPAL CODE AND ADDING SAID FEE TO THE MISCELLANEOUS FEE SCHEDULE

BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF SANTA ANA AS FOLLOWS:

Section 1.    The City Council of the City of Santa Ana hereby finds, determines and declares as follows:

A.    Studies performed on streets in the cities of Austin, Kansas City, Burlington, Cincinnati, Los Angeles, Sacramento, Phoenix, and San Francisco, all have concluded that excavations in paved streets degrade and shorten the life of the surface of the streets.

B.    The studies performed on streets in the cities of Los Angeles, San Francisco and Sacramento concluded that this degradation occurs no matter how well the excavation is restored.

C.    In order to determine the extent to which the pavement degradation found by studies in other cities occurs in the City of Santa Ana (the "City"), the City retained Shahin and Associates to determine the effect of excavations on the surface of streets in the City.

D.    The studies performed determined that even if pavement restoration in the trench itself is structurally adequate, excavations reduce the strength and life of the pavement.

E.    The study performed by Shahin and Associates determined that the extra approximate cost to the City of performing repairs necessary to fully mitigate the damage that these trench cut excavations cause to the street surface would be at least $1,159,148 per year for arterial streets and $245,383 per year for local streets.

F.    On September 17, 2001, the City Council introduced Ordinance No. NS-2480, which if adopted would find that the entity making and benefiting from an excavation in City streets should be required to pay the City a trench cut fee that partially recovers the cost of mitigating the damage caused to the street surface by the excavation.

## EXHIBIT C
### 30

G.    City Municipal Code Sections 33-59 *et seq.*, as amended by said Ordinance, requires that the trench cut fee be paid as a condition of obtaining a permit for excavation of right of way, and provides that the amount of the trench cut fee shall be established by resolution of the City Council.

H.    Said Ordinance also finds and declares that because excavations cause the greatest damage to newly surfaced streets, and to provide an incentive to avoid excavations in newly surfaced streets wherever feasible, the trench cut fee should be highest for excavations in newly surfaced streets, and should decrease as the age of the street surface being excavated increases.

I.    The City Council has reviewed the studies undertaken by the cities of Austin, Kansas City, Burlington, Cincinnati, Los Angeles, Sacramento, San Francisco and Phoenix concluding that excavations in paved streets degrade and shorten the life of the surface of the streets, and the City Council has reviewed the study performed by Shahin and Associates describing the damage and degradation caused to the pavement located adjacent to trenches excavated in paved City streets and calculating the estimated costs for all maintenance, repair or resurfacing that would be necessary to fully mitigate this pavement damage and degradation.

J.    The City Council has considered the testimony and other information presented to the City Council regarding the basis for and the amount of the trench cut fee;

Section 2.    The City Council finds, based on the study performed by Shahin and Associates, that the reasonable cost for all maintenance, repair or resurfacing that would be necessary to partially mitigate the damage and degradation that street excavations cause to the pavement located adjacent to the excavated trench is conservatively estimated at $13.68 per square foot of trench excavated for arterial streets and $9.27 per square foot of trench excavated for local streets.

Section 3.    The trench cut fee authorized by Sections 33-59 et seq. of the Santa Ana City Code, as amended by Ordinance No. NS-2480, shall be in the amounts set forth in Exhibit A, which is attached hereto and incorporated by this reference herein.

Section 4.    The fees herein established do not exceed but rather only partially recover the estimated reasonable costs of providing the maintenance, repair or resurfacing services that would be necessary to fully mitigate the degradation that excavations cause to the pavement located adjacent to the excavated trench, and such fees are established in order to compensate and partially reimburse the City for the estimated reasonable costs of providing such services.

**31**

Resolution No. 2001-063
Page 2 of 5

Section 5.    Beginning July 1, 2002, at the commencement of each fiscal year, unless there is further action of the council this trench cut fee shall annually be increased by an amount equal to the change since the last increase in the Consumer Price Index For All Urban Consumers ("CPI-U") for the Los Angeles-Riverside-Orange County region.  Should a proposed CPI-U increase for any fiscal year not accurately reflect the increase in the City's costs to undertake the program set forth in this Resolution and said Ordinance, then the Executive Director of the Public Works Agency, or designee is directed to place before the City Council a proposal to either (a) not increase the trench cut fee by the full change in the CPI-U, or (b) increase the trench cut fee by more than the change in the CPI-U.

Section 6.    This Resolution shall take effect upon the effective date of Ordinance No. NS-2480, and the Clerk of the Council shall attest to and certify the vote adopting this Resolution.    Should said Ordinance not be adopted, or should said Ordinance not become effective, this Resolution shall be deemed null and void and of no further effect.

Section 7.    That without further action of the City Council this trench cut fee shall be incorporated into the City's Miscellaneous Fee Schedule.

ADOPTED this 1st day of October, 2001.

Miguel A. Pulido
Mayor

APPROVED AS TO FORM:
Joseph W. Fletcher, City Attorney

By: 
Benjamin Kaufman
Chief Assistant City Attorney

32

AYES:              Councilmembers:  Alvarez, Bist, Christy, Franklin, Pulido, Solorio (6)

NOES:              Councilmembers:  McGuigan  (1)

ABSTAIN:           Councilmembers:  None (0)

NOT PRESENT: Councilmembers:  None (0)


## CERTIFICATE OF ATTESTATION AND ORIGINALITY


I, PATRICIA E. HEALY, Clerk of the Council, do hereby attest to and certify the attached Resolution No. 2001-063 to be the original resolution adopted by the City Council of the City of Santa Ana on October 1, 2001.


Date: 10/15/01

Clerk of the Council
City of Santa Ana


**33**

# EXHIBIT A

## TRENCH CUT FEE
## FEE SCHEDULE

| ARTERIAL STREET | Per Square Foot |
|---|---|
| Resurfaced between 0 and 5 years. | $13.68 |
| Resurfaced between 6 and 10 years. | $12.11 |
| Resurfaced between 11 and 15 years. | $11.39 |
| Resurfaced between 11 and 15 years. | $ 9.11 |

| LOCAL STREET | Per Square Foot |
|---|---|
| Resurfaced between 0 and 5 years. | $ 9.27 |
| Resurfaced between 6 and 10 years. | $ 8.24 |
| Resurfaced between 11 and 15 years. | $ 7.74 |
| Resurfaced between 16 and 20 years. | $ 6.98 |
| Resurfaced between 21 and 25 years. | $ 6.21 |

Fee Calculation:

For the purpose of fee calculation, the minimum width of trench shall be deemed to be one foot.

"Arterial street" is as defined and designated in the Circulation Element of the City's General Plan.  A "local street" shall be, for purposes of this trench cut fee, all other streets which do not meet this definition and designation of "arterial streets."

34